STATE OF CONNECTICUT *v.* BELLA KRAJGER

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued October 16—decision released December 16, 1980

*Richard Emanuel,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Walter D. Flanagan,* assistant state's attorney, for the appellee (state).

COTTER, C. J. The defendant was convicted after a jury trial of the crime of murder in violation of General Statutes § 53a-54a.[1] He has appealed from the judgment rendered on the verdict, claiming error on several grounds. Because we hold that the trial court's error in denying the defendant's motion to suppress certain statements made prior to the time the defendant was informed of his *Miranda* rights requires a new trial, we do not address the defendant's other claims.

The defendant was arrested on February 20, 1975, on unrelated charges of burglary, larceny, possession of stolen checks and escape from custody. Unable to post bond, he was still in police custody

---

[1] Although the indictment and judgment refer to General Statutes § 53a-54, that statute has been repealed by Public Acts 1973, No. 73-137, effective October 1, 1973. On the date of the offense alleged in this case, the present murder statute, General Statutes § 53a-54a, was in effect. The defendant has made no claim regarding this technical error.

Section 53a-54a of the General Statutes provides in relevant part: "MURDER DEFINED. . . . (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

on February 26, 1975. On that date, the defendant was taken from his place of detention to the Bridgeport police headquarters. Subsequent to his arrival, the Bridgeport police questioned him regarding the robbery-related death of a Bridgeport woman. Prior to the one and one-half hours of tape recorded questioning, the defendant was informed of his *Miranda* rights.

The issue dispositive of this appeal, however, concerns questioning which took place prior to the tape recording and prior to the recitation of the defendant's *Miranda* rights. *Miranda* v. *Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). About five or ten minutes before commencing the taped interrogation and before informing the defendant of his fundamental constitutional rights under the fifth amendment privilege against self-incrimination and the sixth amendment right to counsel, a captain in the Bridgeport police force approached the holding cell where the defendant was then in custody. The police captain, standing a few feet away from the cell, held up a light jacket. In response to an inquiry by the captain, the defendant responded: "Yes, that's my jacket."[2]

The jacket which the captain displayed to the defendant had been found outside the murder victim's home on the day that the death was discovered. During the taped interrogation the defendant denied

---

[2] There can be no question that the exchange between the police captain and the defendant constituted custodial interrogation. The captain testified that he held the jacket up and said, "Bella, this is your jacket. You left it here last time you were here when you ran out of the building." Although the query was not posed in the form of a question, it clearly was interrogation in that the police conduct was "reasonably likely to elicit an incriminating response." *Rhode Island* v. *Innis,* 446 U.S. 291, 302, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). See also *United States* v. *Lewis,* 425 F. Sup. 1166,

ownership of the jacket. When asked why he earlier had said that it belonged to him, the defendant explained that he had once left a similar jacket in the police station and that, in the poor lighting of the holding cell, he had mistakenly thought that the captain was holding his old jacket.

At trial, the state introduced the captain's testimony that the defendant had admitted ownership of the jacket found at the murder scene. Because this statement was secured prior to the time that the police informed the defendant of his *Miranda* rights, we hold that its admission as evidence is error requiring a new trial. U.S. Const., amend. V; Conn. Const., art. I § 8; *Miranda* v. *Arizona,* supra, 444, 471–72, 476–79; *United States* v. *Lewis,* 425 F. Sup. 1166, 1176–77 (D. Conn. 1977); *State* v. *Benitez,* 157 Conn. 384, 254 A.2d 564 (1969).

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.

---

1176 (D. Conn. 1977); *Santos* v. *Bayley,* 400 F. Sup. 784, 795 (M.D. Pa. 1975), quoting *Commonwealth* v. *Simala,* 434 Pa. 219, 226, 252 A.2d 575 (1969) (conduct "expected to, or likely to, evoke admissions"). This is not a case where an accused volunteers incriminating information. See *Rhode Island* v. *Innis,* supra, 302; *Miranda* v. *Arizona,* 384 U.S. 436, 478, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *United States* v. *Gaynor,* 472 F.2d 899 (2d Cir. 1973) (per curiam) and cases cited therein.