STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert W. CUNNINGHAM, Defendant-Appellant.

Supreme Court

*No. 87–0742–CR. Argued March 30, 1988.—Decided June 2, 1988.*

(Also reported in 423 N.W.2d 862.)

For the defendant-appellant there were briefs (in court of appeals) and oral argument by *Steven D. Phillips,* first assistant state public defender.

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was (in court of appeals) *Donald J. Hanaway,* attorney general.

SHIRLEY S. ABRAHAMSON, J. This is an appeal from a judgment of the circuit court for Racine county, Emmanuel J. Vuvunas, circuit judge. The defendant was convicted of being a convicted felon in possession of a firearm and of resisting an officer in violation of secs. 941.29(1)(a) and 946.41, Stats. 1985–86. The appeal is before this court on certification from the court of appeals. Sec. 808.05(2) and sec. (Rule) 809.61.

The court of appeals stated the issue in its certification as follows: Is confronting the defendant with physical evidence of a crime the functional equivalent of interrogation so that subsequent statements of the defendant must be suppressed if made prior to receiving a *Miranda* warning?

The defendant asserts that the statements he made to the arresting officers following their seizure of a revolver from his bedroom should have been suppressed because they were the product of custodial interrogation and were not preceded by *Miranda* warnings. The defendant contends that the police officers engaged in the "functional equivalent" of express questioning by showing him the revolver.

In *Rhode Island v. Innis,* 446 U.S. 291 (1980), the United States Supreme Court set forth the applicable test for determining what conduct or words by a law enforcement officer constitutes the functional equivalent of express questioning. Applying the *Innis* test, we conclude that a police officer's confronting the accused with physical evidence of a crime may be, but is not necessarily, the functional equivalent of express questioning. Each case must be considered upon its own facts.[1] We conclude that under the circumstances present in this case the police officer's words and conduct in showing the defendant the revolver were not the functional equivalent of express questioning. Accordingly we affirm the conviction.

The facts of this case are undisputed. On April 24, 1986, three officers executed a search of the defend-

---

[1]Several cases discuss the issue of whether the presentation of evidence or a summary of the evidence constitutes the functional equivalent of express questioning. The decision in each case turns on the facts of the case. *See, e.g., United States v. Gay,* 774 F.2d 368, 379 (10th Cir. 1985); *United States v. Thierman,* 678 F.2d 1331, 1334 n. 3 (9th Cir. 1982); *United States v. Bennett,* 626 F.2d 1309 (5th Cir. 1980); *State v. Conover,* — Md. —, 537 A.2d 1167 (1988); *People v. Ferro,* 63 N.Y.2d 316, 472 N.E.2d 13 (1984); *State v. Krajger,* 182 Conn. 497, 438 A.2d 745 (1980); *Maughan v. State,* 473 So.2d 1140, 1143 (Ala. Crim. App. 1985); *State v. Guayante,* 63 Or. App. 212, 663 P.2d 784 (1984); *People v. Benjamin,* 101 Mich. App. 637, 300 N.W.2d 661 (1981).

ant's apartment for cocaine pursuant to a lawful search warrant. The officers knew the defendant was a convicted felon and that he routinely carried a firearm. When the officers entered the apartment, the defendant ran into the bedroom in an attempt to grab or discard items near the head of the bed. In the course of a struggle with the officers, the defendant scattered cocaine around the room. The officers subdued the defendant, handcuffed him, and placed him under arrest for resisting an officer. The officers did not read him any *Miranda* warnings.

After the defendant was placed under arrest and removed from the bedroom, two officers returned to the bedroom to conduct a search for cocaine. They found a loaded revolver between the mattress and box spring, two to four feet from the headboard and about one foot from the side of the bed. One officer unloaded the revolver and then showed it to the defendant, advising him where it had been found and saying to the other officer, "This was apparently what Mr. Cunningham was running into the bedroom for." Upon seeing the revolver and hearing the officer's comment, the defendant stated something to the effect that it was his bedroom and that he had a right to have a gun. These statements were made prior to any *Miranda* warning.

At the hearing to suppress the defendant's statements, the officer denied that he had intended to interrogate the defendant when he showed the defendant the revolver. The officer testified that his intention was to advise the defendant that the officers had recovered the revolver so that the defendant did not later assert that the officers had planted the revolver.

The state and the defendant agree that the defendant was in custody when he made the state-

ments and that he had not been given *Miranda* warnings. The sole issue is whether the police officer engaged in the functional equivalent of interrogation when he showed the defendant the revolver. If the officer's conduct was the functional equivalent of interrogation, the statements should be suppressed.

■ We begin by summarizing the relevant legal principles applicable to this case. The Fifth Amendment to the federal Constitution provides that no "person ... shall be compelled in any criminal case to be a witness against himself." The Supreme Court has held that the Fourteenth Amendment requires observance of this privilege in state court proceedings. *Malloy v. Hogan,* 378 U.S. 1 (1964).

In *Miranda v. Arizona,* 384 U.S. 436 (1966), the Court established that the state may not use a suspect's statements stemming from custodial interrogation unless the state demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Included among those safeguards are the now-familiar *Miranda* warnings.

The Court clarified the *Miranda* case in *Rhode Island v. Innis,* 446 U.S. 291 (1980), by further defining interrogation. In *Innis,* a murder suspect was arrested and given the *Miranda* warnings. He asked for a lawyer. While driving the suspect to the police station, the police officers discussed the possibility that children attending a nearby school for the handicapped might injure themselves if they found a loaded gun. Upon hearing this conversation, the suspect said he would show the officers the location of the gun. The Court concluded that the suspect's statements were admissible.

The *Innis* Court held that interrogation includes not only express questioning of a suspect in custody, but also conduct or words which are the "functional equivalent" of express questioning. Thus, according to *Innis,* Miranda safeguards are implicated when a person in custody is subjected to either express questioning or its functional equivalent. Not all police conduct that may cause a defendant to speak constitutes interrogation. The Supreme Court explained the functional equivalent of express questioning as follows:

> "We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. The focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were

reasonably likely to elicit an incriminating response." (Footnotes omitted.) *Innis*, 446 U.S. at 300–301.

The generally accepted statement of the *Innis* test is that the "functional equivalent" of express questioning is "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301. This language implies an objective foreseeability test. The test is whether an objective observer could foresee that the officer's conduct or words would elicit an incriminating response. Another way of stating the objective foreseeability test is to ask whether the police officer's conduct or speech could reasonably have had the force of a question on the suspect.

The Court qualified the objective foreseeability standard by stating that "any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion might be an important factor in determining whether the police should have known that their words or actions were reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 302 n. 8. An officer's specific knowledge about the suspect may indicate that the officer should have known his or her conduct or words would have had the force of a question on the suspect.

Thus the *Innis* test reflects both an objective foreseeability standard and the police officer's specific knowledge of the suspect. The *Innis* test can be stated as follows: if an objective observer (with the same knowledge of the suspect as the police officer) could,

on the sole basis of hearing the officer's remarks or observing the officer's conduct, conclude that the officer's conduct or words would be likely to elicit an incriminating response, that is, could reasonably have had the force of a question on the suspect, then the conduct or words would constitute interrogation.

Several rules emerge from the *Innis* decision that are important to bear in mind when applying the *Innis* test.

First, administrative routine questioning of all arrestees who are booked or processed is not the equivalent of express questioning. *Innis*, 446 U.S. at 301.

Second, the words "incriminating response" mean any response—"whether inculpatory or exculpatory— that the *prosecution* may seek to introduce at trial." *Innis*, 446 U.S. at 301, n. 5.

Third, the focus of the *Innis* test is "primarily upon the perceptions of the suspect." *Innis*, 446 U.S. at 301. The *Innis* test is directed toward ascertaining whether the officer's conduct or words could reasonably have had the force of a question on the suspect. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. *Innis*, 446 U.S. at 301.

If an officer knows of a suspect's unusual susceptibility to a particular form of persuasion, and the officer's conduct or words play on that susceptibility, the officer's conduct or words might be an important factor in determining whether the police should have known that their words or actions were reasonably likely to elicit an incriminating response. *Innis*, 446 U.S. at 302 n. 8. The police cannot be held accountable

for the unforeseeable results of their words or actions. *Innis,* 446 U.S. at 301–302.

Fourth, the *Innis* test is not directed at the subjective intent of the police officer. Nevertheless, "where a police practice is designed to elicit an incriminating response from the accused, it is unlikely that the practice will not also be one which the police should have known was reasonably likely to have that effect." *Innis,* 446 U.S. at 302, n. 7. See also *Innis,* 446 U.S. at 303, n. 9. Even where the officer testifies that his or her actions had some purpose other than interrogation, the action must be viewed from the suspect's perspective to determine whether such conduct was reasonably likely to elicit a response. If an impartial observer perceives the officer's purpose to be something other than eliciting a response, the suspect is also likely to view the officer's purpose that way.

Lastly, in interpreting and applying the *Innis* test, a court must keep in mind the evils addressed by *Miranda.* The court's definition of interrogation should be responsive to the concerns expressed in the *Miranda* decision. Thus in *Innis* the court explained that express questioning exists when the police officer's conduct or words coupled with the "interrogation environment" are likely to "'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination." *Innis,* 446 U.S. at 299, quoting *Miranda,* 384 U.S. at 457. Justice Powell, writing for the Court in *Arizona v. Mauro,* — U.S. —, 107 S. Ct. 1931, 1936–37 (1987), explained that the purpose of *Miranda* and *Innis* is to prevent "government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment." In other words, *Miranda* procedures are designed to

protect a suspect in custodial situations where the compulsion to confess may be present.

Several commentators have expressed concerns about the *Innis* decision.[2] They contend, as did Chief Justice Burger in his concurrence in *Innis,* that the decision does not provide objective guidelines for proper police conduct and thus imposes practical difficulties on the police. *Innis,* 446 U.S. at 304–305. The commentators complain that the Supreme Court failed to enumerate specific factors a court should examine in determining (1) whether the police officers should have known that their words or conduct would elicit an incriminating response and (2) whether a suspect was unusually susceptible to a given form of persuasion. Although the commentators are correct that *Innis* did not set forth a comprehensive list of factors to consider when deciding whether a particular police practice is the functional equivalent of interrogation, the *Innis* court considered at least two factors to reach its conclusion that the police conduct in *Innis* was not the functional equivalent of interrogation. First, the *Innis* court considered the length of conversation between the officer and the suspect in determining whether the police officer should have known that his words would elicit an incriminating response. Second, the *Innis* court looked to the emotional state of the suspect in determining the suspect's unusual susceptibility.

We must apply the *Innis* test to the facts of this case. On appeal the circuit court's findings of evidenti-

[2]For a discussion of the *Innis* case, *see, e.g.,* 1 LaFave & Israel, *Criminal Procedure* sec. 6.7 (1984); White, *Interrogation Without Questions: Rhode Island v. Innis and United States v. Henry,* 78 Mich L. Rev. 1209 (1980); Comment, *Rhode Island v. Innis,* 9 Hofstra L. Rev. 691 (1981).

ary or historical facts will not be upset unless they are clearly erroneous. Sec. 805.17(2), Stats. 1985–86. The determination of whether the facts of the case satisfy the legal standard articulated in *Innis* is a question of law which this court may determine independently of the circuit court.

The defendant contends that the police officer, by showing him the revolver, effectively summarized the state's case against him. The defendant urges this court to hold that whenever an officer confronts a suspect with incriminating physical evidence, or verbally summarizes the state's case against the suspect, the officer engages in the functional equivalent of express questioning. The *Innis* decision does not adopt this per se rule.

We hold that under the circumstances in this case, the officer's words and conduct in presenting the revolver to the defendant are not interrogation under the *Innis* test. We conclude that an objective observer (knowing what the officer knew about the defendant) would not, on the sole basis of hearing the officer's words and observing the officer's conduct, conclude that the officer's conduct or words would be likely to elicit an incriminating response.

The officer's conduct and words lasted a very short time. There was no indication that the defendant was unusually susceptible to the officer's words and conduct in displaying the gun. Although the defendant had engaged in an altercation with the officers and attempted to destroy the cocaine, the record does not indicate that at the time he made the statements the defendant was unusually disoriented or upset or that the police officer knew of any unusual susceptibility of the defendant.

In deciding whether particular police conduct or words are interrogation, the court must keep in mind the purpose behind the *Miranda* and *Innis* decisions. These decisions were designed to prevent law enforcement officers from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment. *Arizona v. Mauro,* — U.S. —, 107 S. Ct. 1931, 1936–1937 (1987). The officer's conduct and words in this case do not implicate this purpose.

The facts of this case are stronger for the prosecution than those in *Innis.* The police officer's conduct and words in this case were not as provocative as the officer's comments in *Innis.*

While we acknowledge that the presentation of evidence may in some cases be the functional equivalent of express questioning, the facts of this case do not compel such a determination. We affirm the judgment of the circuit court holding that the statements made by the defendant after having been shown the revolver were not the product of express questioning or its functional equivalent.

*By the Court.*—The judgment of the circuit court is affirmed.