[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO SUPPRESS
FACTS:
As a result of a hearing conducted on January 29, 2001 and February 28, 2001, the court makes the following findings of fact:
On July 28, 2000, Detective Steven Augeri was conducting a narcotic surveillance in the Highlands area of West Lake in Middletown. The bus stop area was the subject of citizen complaints concerning narcotics activity. At approximately 10:53 P.M., Det. Augeri observed a dark colored automobile enter the bus area where a group of youths were drinking on a bench. He observed, utilizing binoculars, a person approach the right front passenger side of the vehicle and engage in what appeared to be some kind of a hand to hand transaction. The incident took approximately fifteen to twenty seconds. The male then returned to the group of people who were drinking on the bench. The automobile then left the area and failed to come to a complete stop at the stop sign. Det. Augeri radioed to Officer William McKenna and informed him about what he observed and requested that he stop the vehicle in question. Upon Augeri's arrival to where the car was stopped, the defendant was being placed in handcuffs.
Officer McKenna had pulled the vehicle over a short distance away after CT Page 5960 receiving the broadcast and upon approaching observed both the driver and passenger making furtive movements. The driver, Amy Barry, appeared to be dropping something, and the front seat passenger, the defendant, appeared to be attempting to hide something under himself. After obtaining license and registration from the driver, McKenna radioed for backup. Out of a concern for his safety based on the furtive movements, McKenna ordered the defendant out of the automobile. When the door was opened by the defendant, McKenna observed an open can of beer in his hand. The defendant indicated he was nineteen years of age. McKenna observed a set of brass knuckles on the front passenger seat after the defendant exited the vehicle. The defendant was handcuffed and placed under arrest for Carrying a Dangerous a Weapon (53-206) and Possession of Liquor by a Minor (30-89 (b)).
Det. Steven Augeri had arrived and read the defendant his rights after being informed of what McKenna had observed. The driver was also ordered out of the car and was not ultimately arrested. McKenna then began to search the passenger compartment of the vehicle to determining if there were any weapons or contraband. Upon entering the automobile, he immediately detected an odor of marijuana. The odor became stronger as McKenna searched the back seat area of the vehicle. Upon placing the center arm rest down in the back seat, the smell of unburnt marijuana was at it's strongest. There was no access or opening from the center arm rest to the trunk. At this time, McKenna approached the defendant and asked whether there was anything in the car he should be concerned about. The defendant indicated that "yes, there is a knapsack." When McKenna asked "why should I be concerned?", the defendant replied "check for yourself' and motioned towards the car. A search of the trunk located a large quantity of marijuana (2.7 pounds) in a knapsack and other illegal substances in a shoebox. (127 bottles of ketamin, approximately 100 tablets of esctasy, 37 bottles of liquid LSD, scales, and 27 cans of beer)
DISCUSSION:
A close question arises as to whether or not a reasonable suspicion existed to stop the car containing the defendant based on Det. Augeri's observations of what appeared to be conduct consistent with one drug transaction in an area known for drug use. Terry v. Ohio, 329 U.S. 1
(1968). However, this court need not decide that question because there existed a right to stop the motor vehicle for violating the traffic laws. Det. Augeri observed the automobile fail to come to a complete stop at a stop sign. This gave the police probable cause to believe that the driver of the automobile had committed an infraction. Even if the police were also hoping to discover contraband during the motor vehicle stop, their subjective motives are irrelevant to the stop issue. Whren v.CT Page 5961U.S., 517 U.S. 806 (1996). Once the car had been validly stopped, the police had the authority to request both driver and passenger to exit the vehicle. Pennsylvania v. Mimms, 434 U.S. 106 (1977); Maryland v. Wilson,519 U.S. 408 (1997). Although pursuant to the U.S. Supreme Court the police do not need any reason to ask the occupants of a validly stopped car to exit, in the case at hand, Officer McKenna had a reason to fear for his safety based on the occupants furtive gestures and movements during the stop.
Once the defendant was lawfully ordered to exit the vehicle, he was observed to be holding an open can of beer and admitted he was under the age of twenty-one. Upon looking into the automobile, McKenna observed in plain view a set of brass knuckles in the area where the defendant was making his furtive movements. At this time the defendant was properly placed under custodial arrest for Possession of Alcohol by a Minor (30-89
(b)) and Carrying a Dangerous Weapon (53-206).
After being placed under arrest and taken into custody, the police had the right to search the passenger compartment of the automobile incidental to that arrest. New York v. Belton, 453 U.S. 454 (1981); Statev. Badgett, 200 Conn. 412 (1986). Although not discovering any other evidence or contraband in the passenger compartment area, McKenna did
notice the smell of marihuana which got stronger as he proceeded from the front to the back seat area. McKenna testified that the odor was strongest upon pulling down the rear seat center arm rest. Based on the earlier observations made by Det. Augeri concerning an apparent drug transaction and the odor of marihuana emanating from the rear area of the automobile, McKenna had probable cause to believe that the car contained contraband and was allowed to search the trunk and any containers therein that could hold the object of his search. Carroll v. U.S., 257 U.S. 132
(1925); California v. Acevedo, 500 U.S. 565 (1991); State v. Dukes,209 Conn. 98 (1988); and State v. Longo, 243 Conn. 732 (1998). The odor of marihuana alone can establish probable cause if the officer has the training and experience to detect it, as McKenna did. State v. Arpin,188 Conn. 183 (1982); State v. Wright, 58 Conn. App. 136, 145 (2000).
Although this court has found that the police had probable cause to conduct a warrantless search of the automobile, this court also finds that the defendant consented to the search of the knapsack in the trunk of the vehicle. When asked whether there was anything in the car the officer should be concerned about, the defendant replied, "Yes, there is a knapsack." When McKenna asked why he should be concerned, the defendant responded "check for yourself' and motioned towards the car. There was no knapsack in the passenger compartment of the automobile. The burden of proving that consent was voluntarily given lies with the prosecution and no one factor is controlling. It is question of fact to be determined CT Page 5962 from the totality of the circumstances. Schuekloth v. Bustamonte,412 U.S. 218 (1973). If a person is in custody, he can still exercise a free choice. There was no evidence that threats were made, that the defendant's cooperation was coerced, or that his will was overborne by anyone. Although admittedly there did not exist an extensive conversation with the defendant concerning a consent to search the automobile, still his words and conduct indicated a willingness to allow the police to check the trunk area where the knapsack was located. This court finds that the defendant freely and voluntarily consented to the resulting search.
For all of the foregoing reasons, the Motion to Suppress is DENIED.
Patrick J. Clifford, Judge