STATE OF CONNECTICUT *v.* DAGOBERTO CUESTA
(AC 20583)

Dranginis, Flynn and Daly, Js.

Argued December 13, 2001—officially released February 26, 2002

*Alice Osedach-Powers*, assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Stephen J. Sedensky III*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Dagoberto Cuesta, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the third degree in violation of General Statutes § 53a-136 (a) and assault in the third degree in violation of General Statutes § 53a-61.[1] On appeal, the defendant claims that the trial court improperly (1) excluded evidence of the presence of a third party's semen, (2) admitted a uniform arrest report into evidence and (3) found the defendant competent to stand trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 23, 1997, the victim was walking in Bridgeport, ready to board a train to New York. She was grabbed from behind by the defendant and dragged to an area away from the road, where she was hidden by shrubs and other vegetation. The defendant repeatedly

---

[1] The defendant also was charged with attempt to commit first degree sexual assault in violation of General Statutes §§ 53a-70 (a) (1) and 53a-49, and kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A). He was acquitted of those charges.

told his victim, "I'm Cuban. I'm gonna rape and murder you." During a struggle, the defendant reached into the victim's pocket and took her train ticket and five dollars. She managed to escape and ran toward a nearby market.

A police cruiser drove by, and the victim reported the incident to Joseph Morales, a Bridgeport police officer. The victim was distraught and told Morales that she had been raped. She gave him a description of the defendant, including a description of his clothing, and stated that he was wearing red underwear. Morales began patrolling the area and saw the defendant about fifty feet away. When Morales stopped the defendant, he said, "I didn't do nothing to that f***in' bitch and she has my money." The victim identified the defendant, whereupon he said to her, "Yeah bitch, it's me." A physician later examined the victim and found her bruised and beaten.[2] A search of the defendant's person revealed one train ticket to New York and five dollars. He was wearing red underwear.

Initially, the victim claimed that the defendant had raped her.[3] She made statements to that effect to both police and Sayad Amir Zafer, a physician. Two weeks prior to trial, however, she recanted and stated that the defendant had not raped her. On direct examination, she testified that he grabbed her, stated that he was Cuban and was going to rape and murder her, they struggled, he took her ticket and money, and that while she was lying on the ground, he pulled down his pants and underwear. He was about to rape her when she pulled out a pair of scissors, pushed him and ran away.

[2] Sayad Amir Zafer, a physician, testified that the victim had bruises on her chin, chest and shoulder blades, and had lost some teeth and that others were loose. Semen was found in the victim's vagina and was recovered from her underpants.

[3] The state, therefore, initially charged the defendant with sexual assault in the first degree. A substitute information charging the defendant with attempt to commit sexual assault in the first degree subsequently was filed.

She also claimed that she lied to police initially because she thought the police would be quicker to respond. She explained that she lied to hospital personnel about the source of the semen as well because she was involved with a married man and did not want him involved. The scissors never were located by police. The victim claimed that she found them later at the scene, but that she no longer had them in her possession.

The jury returned a verdict of guilty of robbery in the third degree and assault in the third degree. The defendant was sentenced to five years on the robbery count, suspended after three and one-half years, and one year on the assault count, to run concurrently, for a total effective sentence of five years, execution suspended after three and one-half years, with five years probation. This appeal followed. Additional facts and procedural history will be set forth as necessary to resolve the claims on appeal.

I

The defendant first claims that the court improperly excluded evidence of semen from a third party, thereby violating his rights pursuant to General Statutes § 54-86f, and his constitutional rights to confrontation and to present a defense under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut. The defendant argues that he improperly was prohibited from cross-examining the victim, Zafer and Morales about the presence of semen to show that the victim was not credible. We do not agree.

The victim initially accused the defendant of assaulting her by forcing her to have sexual intercourse. She claimed that there was penetration and that he ejaculated in her vagina. Semen specimens recovered from the victim's underpants were compared to DNA

samples from the defendant. He was excluded as a possible source of the semen. As a result, the state filed a motion in limine, requesting that pursuant to the rape shield statute, § 54-86f, all evidence relating to semen be excluded because the state would not be offering such evidence to prove the identity of the alleged attacker. The court granted the state's motion, finding that any probative value of the evidence was outweighed by its prejudicial impact on the victim. The court further ruled on the defendant's motion to present evidence, which involved a request to question the victim on cross-examination about whether she had sexual intercourse with a third party within seventy-two hours of the alleged incident. The court rejected the request on the ground that the defense sought to impeach the victim by her prior inconsistent statements, a tactic on which the defense already had "spent a good deal of time."

On appeal, the defendant argues that the evidence went directly to the victim's credibility and that its exclusion precluded him from presenting a defense that she changed her story only upon learning that his DNA test was negative. The defendant asserts that preclusion of the evidence prevented him from raising doubt that the entire incident happened at all. The defendant further claims that the evidence should have been allowed under § 54-86f (1), (2) or (4) because the victim had placed her credibility and sexual conduct in issue.

"We first set forth the standard of review for determining whether the exclusion of this evidence entitles the defendant to a new trial. Upon review of a trial court's decision, we will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . The trial court has wide discretion in determining the relevancy of evidence and the scope of cross-examination and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling

in determining whether there has been an abuse of discretion. . . . To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial. . . .

"Although the outright denial of a defendant's opportunity to cross-examine a witness on an element of the charged offense implicates the constitutional protection of the confrontation clause, such a denial is [still] subject to harmless error analysis . . . [which will result in a new trial] only if the exclusion of the proffered evidence is not harmless beyond a reasonable doubt. . . .

"Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless." (Citations omitted; internal quotation marks omitted.) *State* v. *Rolon*, 257 Conn. 156, 173–74, 777 A.2d 604 (2001).

"[I]n cases involving sexual crimes, [t]he rape shield statute . . . was enacted specifically to bar or limit the use of prior sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material. . . . We must remember that [t]he determination of whether the state's interests in excluding evidence must yield to those interests of the defendant is determined by the facts and circumstances of the

particular case. . . . In every criminal case, the defendant has an important interest in being permitted to introduce evidence relevant to his defense. Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. . . . Whenever the rape shield statute's preclusion of prior sexual conduct is invoked, a question of relevancy arises. If the evidence is probative, the statute's protection yields to constitutional rights that assure a full and fair defense. . . . If the defendant's offer of proof is sufficient to show relevancy, and that the evidence is more probative to the defense than prejudicial to the victim, it must be deemed admissible at trial. . . . When the trial court excludes defense evidence that provides the defendant with a basis for cross-examination of the state's witnesses, [despite what might be considered a sufficient offer of proof] such exclusion may give rise to a claim of denial of the right to confrontation and to present a defense." (Citations omitted; internal quotation marks omitted.) Id., 176–78.

We cannot conclude that the evidence sought to be admitted in this case would be more probative to the defense than prejudicial to the victim. The victim testified that she initially lied to police and medical personnel about having had sexual relations with a third party within seventy-two hours of the alleged incident and gave her reasons for doing so. The jury had a sufficient basis to determine the credibility of the witness. Moreover, defense counsel was free to argue that if the victim would lie to police and medical personnel, why should she not lie at trial? That being the case, it is difficult to perceive any justification for further questioning about her sexual conduct except to harass and embarrass the victim, and to confuse or mislead the jury. Moreover, we note that the defendant was not convicted

on the charge of attempt to commit sexual assault in the first degree. The presence of semen was not relevant to the charges of assault and robbery of which the defendant was found guilty. Therefore, even if we were to conclude that the defendant was deprived of his constitutional rights, the error was harmless.

## II

The defendant next claims that the court improperly admitted into evidence the uniform arrest report identifying his place of birth as Cuba. The defendant claims that his statement that he was born in Cuba was admitted in violation of his rights against self-incrimination under the state and federal constitutions. Specifically, he argues that the report should not have been admitted because he was not given *Miranda*[4] warnings prior to stating his place of birth.[5] We are not persuaded.

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *State* v. *Bridges*, 65 Conn. App. 517, 521, 782 A.2d 1256, cert. denied, 258 Conn. 934, 785 A.2d 230 (2001).

Custodial interrogation under *Miranda* includes both express questioning, and "any words or actions on the part of the police (other than those normally attendant

---

[4] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] The defendant also claims that the statement was hearsay and was not properly admitted under any exception to the hearsay rule. The defendant does not brief that issue beyond a mere statement of his claim. We therefore deem the claim abandoned. See, e.g., *State* v. *Anderson*, 67 Conn. App. 436, 441–42 n.8, 787 A.2d 601 (2001).

to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island* v. *Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). In *Pennsylvania* v. *Muniz*, 496 U.S. 582, 601, 110 S. Ct. 2638, 110 L. Ed. 2d 528 (1990), the United States Supreme Court recognized a "routine booking question" exception to the requirement of *Miranda* warnings. "The exception encompasses questions that secure 'biographical data necessary to complete booking or pretrial services.' . . . The court acknowledged that the questions qualify as custodial interrogation but held that questions such as name, address, height, weight, eye color, date of birth, and age fall outside the sweep of *Miranda* v. *Arizona*, [384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)]." (Citation omitted.) *State* v. *Jones*, 37 Conn. App. 437, 444, 656 A.2d 696, cert. denied, 233 Conn. 915, 659 A.2d 186 (1995). The exception does not arise, however, if the questions are reasonably likely to elicit an incriminating response in a particular situation. *United States* v. *Mata-Abundiz*, 717 F.2d 1277, 1280 (9th Cir. 1983).

The defendant argues that although the question posed to him typically is a routine one, the police were aware that the victim had said that her attacker was Cuban and that he allegedly had said, "I'm Cuban. I'm gonna rape and murder you." Thus, police knew that the question was likely to elicit an incriminating response. We disagree.

"The test as to whether a particular question is likely to elicit an incriminating response is objective; the subjective intent of the police officer is relevant but not conclusive and the relationship of the questions asked to the crime is highly relevant. . . . Ordinarily, the routine gathering of background, biographical data will not constitute interrogation. . . . We are aware, however, that [a] person's name, age, address, marital status and

similar data, while usually non-incriminatory in character, may in a particular context provide the missing link required to convict. . . . [W]e recognize the potential for abuse by law enforcement officers who might, under the guise of seeking objective or neutral information, deliberately elicit an incriminating statement from a suspect. . . . A balance must be struck between information legitimately required by law enforcement to facilitate booking . . . and the protection of a defendant's constitutional rights." (Citations omitted; internal quotation marks omitted.) *State* v. *Evans*, 203 Conn. 212, 226–27, 523 A.2d 1306 (1987); see also *United States* v. *Mata-Abundiz*, supra, 717 F.2d 1280.

Here, the purpose of the questions was not to elicit an incriminating response. Rather, the purpose was to gather the biographical data necessary to complete a booking procedure, specifically, the defendant's place of birth. That the question was posed in the context of filling out the uniform arrest report lends further support to our conclusion that the police meant only to gather ordinary information for administrative purposes. The only evidence in the record to support the defendant's argument that the police intended to elicit an incriminating response was that Officer Morales knew that the victim had claimed that the defendant was Cuban and Morales was present during the booking process. It is not clear from the record that it was not the booking officer who asked the question while completing the uniform arrest report. We also cannot say that the question asked was so highly relevant to the crime committed to suggest that an incriminating response would be elicited. The defendant's country of origin is wholly unrelated to the elements of the crime charged. "Routine questions . . . ordinarily innocent of any investigative purpose, do not pose the dangers *Miranda* was designed to check . . . ." *United States*

v. *Gotchis*, 803 F.2d 74, 79 (2d Cir. 1986). We therefore conclude that under the facts of this case, *Miranda* warnings were not necessary, and the defendant's statement, as set out in the uniform arrest report, properly was admitted into evidence.

### III

The defendant's final claim is that the court abused its discretion in finding him competent to stand trial. We disagree.

We review the court's determination of competency under an abuse of discretion standard. *State* v. *Williams*, 65 Conn. App. 59, 84, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001). "In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 254 Conn. 659, 665–66, 759 A.2d 79 (2000).

"The conviction of an accused person who is not legally competent to stand trial violates the due process of law guaranteed by the state and federal constitutions. Conn. Const., art. I, § 8; U.S. Const., amend. XIV, § 1 . . . . This constitutional mandate is codified in . . . [General Statutes] § 54-56d (a), which provides that [a] defendant shall not be tried, convicted or sentenced while he is not competent. [A defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense.] . . . This statutory definition mirrors the federal competency standard enunciated in *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam). According to *Dusky*, the test for competency must be

whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him. . . . Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial. . . .

"Section 54-56d (b) provides: A defendant is presumed to be competent. The burden of proving that the defendant is not competent by a preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry. Although § 54-56d (b) presumes the competency of defendants, when a reasonable doubt concerning the defendant's competency is raised, the trial court must order a competency examination. . . . Thus, [a]s a matter of due process, the trial court is required to conduct an independent inquiry into the defendant's competence whenever he makes specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . . Substantial evidence is a term of art. Evidence encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is substantial if it raises a reasonable doubt about the defendant's competency." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, supra, 65 Conn. App. 84–86.

"[T]he rule of *Pate* v. *Robinson* [383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)] imposes a constitutional obligation, under the due process clause, to undertake

an independent judicial inquiry, in appropriate circumstances, into a defendant's competency to stand trial . . . . When a *Pate* inquiry is required, a court may not rely on the defendant's subjective appraisal of his own capacity or on the court's personal observations of the defendant but must hold an evidentiary hearing into the defendant's competence. . . . Competence to stand trial is a legal question, which must ultimately be determined by the trial court." (Citation omitted; internal quotation marks omitted.) *State* v. *George B.*, 258 Conn. 779, 786, 785 A.2d 573 (2001). "The decision to grant [an evidentiary] hearing [into a defendant's competence] requires the exercise of sound judicial discretion." (Internal quotation marks omitted.) Id., 786–87.

The following additional facts are necessary for our resolution of the defendant's claim. The record reveals that the defendant was the subject of several competency hearings in Connecticut since 1991 and had been committed to the Whiting Forensic Division of the Connecticut Valley Hospital. The record reveals that, at the competency hearing that is the subject of this claim, the court, *Thim, J.*, heard contradictory expert testimony regarding the defendant's claimed incompetency. The court found the defendant was malingering and, therefore, declared him competent to stand trial. We find no abuse of discretion.

Among the experts for the state was Guay Chatfield, director for the Bridgeport office of court evaluations, forensic services and department of mental health and addiction services for the state of Connecticut. She testified that she led a clinical team that evaluated the defendant. The team conducted a forty-five minute interview with the defendant and reviewed his background, and his psychiatric, neurological and psychological records and evaluations, including a prior diagnosis of malingering from the Whiting Forensic

Division. The team, however, was unable to make a competency determination because the defendant was uncooperative. She testified, however, that he would fluctuate between rational and incoherent conversation. He would speak rationally about his medical condition and then become incoherent when asked about the trial process. She further testified that the defendant failed some simple malingering tests, thus indicating that he was faking his symptoms.

Jay Berkowitz, a psychiatrist at the Bridgeport correctional center, who is board certified in forensic psychiatry, testified that he observed the defendant on a regular basis for several months. During that time, he observed the defendant become agitated and anxious, and stop taking his medication before court appearances. He testified that the defendant had no trouble speaking English and that it was his opinion that the defendant was competent to stand trial.

Christina Ciocca, a neuropsychologist and expert in malingering, testified on behalf of the defendant. She evaluated the defendant in his native language, Spanish, and ultimately reported that he exhibited symptoms consistent with traumatic brain injury. She found his understanding of English to be "not very good" and detected no evidence of malingering.

"It is well settled that the trier of fact can disbelieve any or all of the evidence proffered . . . including expert testimony, and can construe such evidence in a manner different from the parties' assertions." (Internal quotation marks omitted.) *State* v. *Alvarado*, 62 Conn. App. 102, 112, 773 A.2d 958, cert. denied, 256 Conn. 907, 772 A.2d 600 (2001). "[T]he credibility and weight to be given to the testimony of the defendant's expert was solely within the province of the [jury]." *Evans* v. *Taylor*, 67 Conn. App. 108, 113, 786 A.2d 525 (2001). "Where, as here, there is strongly conflicting testimony from the

expert witnesses, the trier of fact must determine the credibility of that testimony and may believe all, some or none of the testimony of a particular witness." *Granger* v. *A. Aiudi & Sons*, 60 Conn. App. 36, 43, 758 A.2d 417, cert. denied, 255 Conn. 902, 762 A.2d 908 (2000); 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 118 (c), pp. 1146, 1149. We conclude that the record indicates that the court properly weighed and considered the conflicting testimony, and that it could reasonably conclude as it did. We therefore conclude that the court did not abuse its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.