[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR RELEASE
On December 17, 2001, the court held a hearing to examine the issue of the competency of the defendant, Miguel Morales. On February 20, 2002, the defendant filed a motion for findings of incompetence and inability to be restored[1] as well as a motion for his release. In his motion for release, the defendant argues that General Statutes § 54-56d (m) is unconstitutional, in that it infringes on his liberty interest without due process under both the fourteenth amendment to the United States constitution and Article first, § 8 of the Connecticut constitution. The defendant further contends that the statute is unconstitutionally vague on its face in that it fails to set forth a standard of proof for the court to follow in determining whether he should be released or civilly committed and fails to set forth a burden of persuasion.[2]
General Statutes § 54-56d sets out the procedures that apply to determining whether a criminal defendant is competent to stand trial. "The conviction of an accused person who is not legally competent to stand trial violates due process of law guaranteed by the state and federal constitutions. . . . This constitutional mandate is codified in . . . [General Statutes] § 54-56d (a), which provides that [a] defendant shall not be tried, convicted or sentenced while he is not competent. [A defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense.] . . . This statutory definition mirrors the federal competency standard enunciated in Dusky v. United States, 362 U.S. 402, 80S.Ct. 788, 4 L.Ed.2d 824
CT Page 5521-ar (1960) (per curiam)."[3] (Citations omitted; internal quotation marks omitted.) State v. Cuesta, 68 Conn. App. 470, 480, ___ A.2d ___ (2002). "Section 54-56d (b) provides: A defendant is presumed to be competent. The burden of proving that the defendant is not competent by preponderance of the evidence and the burden of going forward with the evidence are on the party raising the issue. The burden of going forward with the evidence shall be on the state if the court raises the issue. The court may call its own witnesses and conduct its own inquiry. Although § 54-56d (b) presumes the competency of defendants, when a reasonable doubt concerning the defendant's competency is raised, the trial court must order a competency examination. . . . Thus, [a]s a matter of due process, the trial court is required to conduct an independent inquiry into the defendant's competence whenever he (sic) makes specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . ." (Internal quotation marks omitted.) State v. Cuesta, supra., 68 Conn. App. 481. In addition, "[T]he rule of Pate v. Robinson, [383 U.S. 375, 86 S.Ct. 836,15 L.Ed.2d 815 (1966)] imposes a constitutional obligation, under the due process clause, to undertake an independent judicial inquiry, in appropriate circumstances, into a defendant's competency to stand trial." (Internal quotation marks omitted.) State v. Cuesta, supra., 68 Conn. App. 481-82. "Competence to stand trial is a legal question, which must ultimately be determined by the trial court." Id., 482.
"The trial court should carefully weight the need for a hearing in each case, but this is not to say that a hearing should be available on demand. The decision whether to grant a hearing requires the exercise of sound judicial discretion . . . A court may undertake a competency examination upon a motion by the defendant or the state and in some circumstances must evaluate the defendant's competency sue sponte. General Statutes § 54-56d (c). If the court finds that the request for an examination is justified and that . . . there is probable cause to believe that the defendant has committed the crime for which he is charged, the court shall order an examination of the defendant as to his competency. General Statutes § 54-56d (d)." (Internal quotation marks omitted.) State v. Williams, 65 Conn. App. 59, 86, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001).
"If [the court] finds that the defendant is not competent, it shall also find whether there is a substantial probability that the defendant, if provided with a course of treatment, will regain competency within the maximum period of any placement order permitted under this section." General Statutes § 54-56d (f). "If, at the hearing, the court finds that there is not a substantial probability that the defendant, if CT Page 5521-as provided with a course of treatment, will regain competency within the period of any placement order under this section, the court shall follow the procedure set forth in subsection (m) of this section." General Statutes § 54-56d (g).
General Statutes § 54-56d (m) the subsection that is at issue in the present case, provides, in pertinent part: "If at any time the court determines that there is not a substantial probability that the defendant will obtain competency within the period of treatment allowed by this section . . . the court shall either release the defendant from custodyor order the defendant placed in the custody of the Commissioner ofMental Health and Addiction Services. the Commissioner of Children andFamilies or the Commissioner of Mental Retardation. The commissioner given custody or his designee shall then apply for civil commitment according [to the relevant statutes]. . . . The court shall hear arguments as to whether the defendant should be released or should be placed in the custody of the Commissioner of Mental Health and Addiction Services, the Commissioner of Children and Families or the Commissioner of Mental Retardation" (emphasis added).
Both the United States Supreme Court and the Connecticut Supreme Court have recognized that the involuntary commitment of an individual implicates the individual's liberty interest and thus, that the procedures used to do so must comport with due process. "Freedom from unjustified governmental intrusions into personal security and bodily freedom are basic, historically recognized liberty interests that are protected by the federal constitution. Foucha v. Louisiana, 504 U.S. 71,80, 112 S.Ct. 1780, 1785, 118 L.Ed.2d 437 (1992); Vitek v. Jones,445 U.S. 480, 492, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). As a matter of federal law, [i]t is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection . . . that is, the nature of commitment [must] bear some reasonable relation to the purpose for which the individual is committed. Id., 79. The United States Supreme Court has recognized involuntary commitment to a mental institution, in particular, as involving more than a loss of freedom from confinement; Vitek v. Jones, supra, 492; due to its stigmatizing consequences, and the potential exposure to invasive, compulsory medical and psychiatric treatment. Id. The law of federal due process accordingly imposes significant constitutional constraints on involuntary commitments. Even for the purpose of psychiatric treatment, a state may not confine an individual, unless the individual is both mentally ill and dangerous. O'Connor v. Donaldson, 422 U.S. 563, 573-76,95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). To prevail in civil commitment proceedings, the Government . . . [must] demonstrate by clear and CT Page 5521-at convincing evidence that the individual is mentally ill and dangerous.Jones v. United States, 463 U.S. 354, 362, 103 S.Ct. 3043, 77 L.Ed.2d 694
(1983); Addington v. Texas, 441 U.S. 418, 426-27, 433, 99 S.Ct. 1804,60 L.Ed.2d 323 (1979). Although these procedural protections are directed to persons who are civilly committed, they apply as well, under federal equal protection law, to a state's initiation of involuntary commitment proceedings for certain persons involved in the criminal justice system, such as . . . criminal defendants found not competent to stand trial.Jackson v. Indiana, 406 U.S. 715, 724, 92 S.Ct. 1845, 32 L.Ed.2d 435
(1972)." (Citations omitted; internal quotation marks omitted.) State v.Metz, 230 Conn. 400, 412-13, 645 A.2d 965 (1994).
This, however, does not end the analysis. The court must also consider whether the statute is unconstitutional because it is vague. "The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution. . . . The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standard less law enforcement." (Citations omitted; internal quotation marks omitted.)State v. Burton, 258 Conn. 153, 158-59,778 A.2d 955 (2001).
In the present case, the second principle is at issue. Pursuant to this principle, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." (emphasis added) State v. Indrisano, 228 Conn. 795, 803, 640 A.2d 986
(1994). "The United States Supreme Court has emphasized that the more important aspect of the vagueness doctrine is not actual notice, but . . . the requirement that a legislature establish minima/guidelines togovern law enforcement. (Internal quotation marks omitted.) Kolender v.Lawson, [461 U.S. 352, 357-58, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)];State v. Schriver, [207 Conn. 456, 460, 542 A.2d 686 (1988).] Thus, [i]n order to surmount a vagueness challenge, a statute . . . must not impermissibly [delegate] basic policy matters to policemen, judges
(emphasis added), and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Id.; see Grayned v. Rockford, 408 U.S. 104, 108-109,92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Finally, [i]f the meaning of a statute can be fairly ascertained a statute will not be void for vagueness . . . for [i]n most English words and phrases there lurk uncertainties. [T]he statute must contain some core meaning within which the defendant's CT Page 5521-au actions clearly fall." (Internal quotation marks omitted.) State v.McMahon, 257 Conn. 544, 552, 778 A.2d 847 (2001).
"These standards should not . . . be mechanically applied. The degree of vagueness that the Constitution tolerates — as well as the relative importance of fair notice and fair enforcement — depends in part on the nature of the enactment. . . . The Court has . . . expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. . . . [P]erhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply. Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498-99, 102 S.Ct. 1186,71 L.Ed.2d 362, reh. denied, 456 U.S. 950, 102 S.Ct. 2023,72 L.Ed.2d 476 (1982)." (Internal quotation marks omitted.) State v.Indrisano, supra., 228 Conn. 803-04.
Here, the defendant contends the statute is unconstitutionally vague on its face because it violates his constitutional right to due process. "In a void-for-vagueness challenge to a statute, a court ordinarily must look to the constitutionality of the statute as applied to the facts of that case except where the statute might chill conduct protected by thefirst amendment to the United States Constitution. In such cases as Ramos v.Town of Vernon, 254 Conn. 799, 844, 761 A.2d 705 (2000), and State v.Wilchinski, 242 Conn. 211, 216, 700 A.2d 1 (1997), the Connecticut Supreme Court has suggested, without deciding, that a facial analysis might also apply to claims that a statute infringes on a fundamental right. . . ." In re of William B., Superior Court, judicial district of Middlesex at Middletown (August 31, 2001, Frazzini, J.)
"Our vagueness inquiry — whether facial or as applied — extends only to those portions of the statute that were applied to the defendant in this case. Smith v. Goguen, supra, 581; Colten v. Kentucky,407 U.S. 104, 111 n. 3, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). Further, in evaluating the defendant's challenge to the constitutionality of the statute, we read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it. We will indulge in every presumption in favor of the statute's constitutionality . . . State v. Floyd, 217 Conn. 73, 79, 584 A.2d 1157 (1991); State v.Breton, 212 Conn. 258, 269, 562 A.2d 1060 (1989); McConnell v. BeverlyEnterprises-Connecticut, Inc., 209 Conn. 692, 705, 553 A.2d 596 (1989). In so doing, we take into account any prior interpretations [of] this CT Page 5521-av court, our Appellate Court and the Appellate Session of the Superior Court. . . ." (Internal quotation marks omitted.) State v. Indrisano, supra, 228 Conn. 804-05.
"When a litigant claims that a law is vague on its face, this court will examine the challenged statute to see if it is impermissibly vague in all of its applications. A statute that is impermissibly vague in all its applications is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. . . . Such a provision simply has no core. . . . Put another way, a determination that the statute is not vague with respect to at least one application will defeat [the plaintiffs'] facial challenge." (Citations omitted; internal quotation marks omitted.)Sweetman v. State Elections Enforcement Commission, 249 Conn. 296,320-21, 732 A.2d 144 (1999). The same is true of any statute that fails to state the specific standards that the court is required to apply.
The language of the portion of the statute at issue is as follows: "If at any time the court determines there is not a substantial probability that the defendant will attain competency within the period of treatment allowed by this section . . . the court shall either release the defendant from custody or order the defendant placed in the custody of the [proper] Commissioner. . . . The court shall hear arguments as to whether the defendant should be released or placed in the custody of the [proper] Commissioner. . . ." General Statutes § 54-56d (m). The plain language of the statute does not provide the trier of fact with any standards or guidance for deciding whether the defendant should be released or retained in custody. Further, the statute provides nostandards or guidance as to how a court is to determine, if the defendant is to be detained, as to which Commissioner should be entrusted with the care of the incompetent defendant.
As to prior interpretations, the Connecticut Appellate Court examined § 54-56d (m) in State v. Curtis, 22 Conn. App. 199, 576 A.2d 1299
(1990). In that case, the court stated: "The procedures for determining competency and the placement alternatives available if a defendant is found incompetent are governed by General Statutes 54-56d. This statute sets forth with punctilious detail the actions to be taken by a court in competency matters. Once the court makes certain findings regarding the defendant's competency and his chances for restoration; see General Statutes 54-56d (f); the statute contains carefully drawn procedures that dictate precisely what the court may order with respect to the disposition of incompetent defendants." Id., 203. The trial court in that CT Page 5521-aw case found that "the defendant was incompetent, and, second, it found that there was no substantial probability that his competency would be regained. Given these findings, under this statutory scheme for determining competency the court's subsequent action regarding the defendant's placement alternatives was controlled by General Statutes54-56d (g), which directed the court to follow the procedure set forth in subsection (m) of this section. Subsection (m) is a virtual blueprint forwhat the court may order when an incompetent defendant is found to have no substantial probability of regaining his competency. The court here acted improperly in framing a release order that, by including a condition thereupon, exceeded the boundaries of the statute." (Emphasis added; internal quotation marks omitted.) Id., 204. In Curtis, the issue was whether the trial court complied with the strictures of the statute as far as what the court could order, and not whether the statute contained a standard the court should apply in making its determination. Thus, although the Appellate Court has reviewed § 54-56d (m) in recent history and it has found it to be "clear and unambiguous" as to the two choices the court can make, it did not specifically address the issue of the standard the court is to follow when deciding whether to release the defendant or commit him to the care of the proper Commissioner. Therefore, it does not clarify the vagueness of the portion of the statute challenged herein. The statute is extraordinarily clear in defining the choices available to a trial judge. The statute is unconstitutionally vague in providing standards for the trial judge to use in selecting the choice or implementing the choice of remedy.
As the defendant states in his motion, "[t]he trial court is left with no guidance to properly assess wether the defendant should be committed or released." Defendant's assertion is buttressed by the lack of standards established once a decision to release is made by the court. This portion of section 54-56d (m) is impermissibly vague in all its applications because it impermissibly permits judges to make a determination on whether a defendant should be deprived of his liberty on an "ad hoc and subjective basis." This type of standardless law enforcement violates the defendant's right to due process, and is, therefore, unconstitutional.
"[V]ague laws defeat the intrinsic promise of, and frustrate the essence of, a constitutional regime. We remain `a government of laws, not of men, `Marbury v. Madison, 5 U.S. (1 Cranch.) 137, 163, only so long as our laws remain clear." (Internal quotation marks omitted.) Packer v.Board of Education, 246 Conn. 89, 100-01, 717 A.2d 117 (1998). Connecticut General Statutes § 54-56d (m) is unclear, and therefore, leaves the law open to individual interpretation and standardless enforcement. It is therefore vague and unconstitutional.
 ___________________ DANIEL E. BRENNAN, JR., J.
CT Page 5521-ax