STATE OF CONNECTICUT *v.* ANDRE WALTERS
(AC 26651)

Bishop, Harper and Mihalakos, Js.

Argued November 14, 2005—officially released March 14, 2006

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *James E. Thomas*, state's attorney, and, on the brief, *Michael A. Gailor*, executive assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Andre Walters, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit kidnapping in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-92 (a) (2) (C), attempt to commit kidnapping in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-94, and threatening in the second degree in violation of General Statutes § 53a-62 (a) (1). The defendant claims that the court improperly denied his motion to suppress an incriminating statement that he made while he was in police custody. We affirm the judgment of the trial court.

The following facts are relevant to the defendant's claim on appeal. On June 26, 2003, Lisa Campbell, the victim, stopped at a gasoline station near 140 Weston Street in Hartford on her way home from work. As the victim stood outside her vehicle pumping gasoline, she was approached by the defendant, who asked her for directions to Tower Avenue. The victim offered to allow the defendant to follow her to Tower Avenue in his automobile, and he accepted. As the victim turned to

enter her vehicle, she was accosted by the defendant from behind. The defendant pressed a hard object into the victim's back, and told her that it was a gun and to get into the vehicle. A struggle ensued during which the defendant attempted to push the victim over to the passenger side of the vehicle, but the victim was able to resist. The victim struggled free from the defendant and ran toward the gasoline station's convenience store. The defendant pursued the victim until she entered the store.

Once inside the convenience store, the victim encountered Detective Nathaniel Ortiz of the Hartford police department. The victim informed Ortiz of what had just occurred and pointed to the defendant, who by then was walking across the street. Ortiz called for backup and began to follow the defendant. When Officer Michael Francis arrived at the scene, the officers detained the defendant, handcuffed him and placed him in the backseat of Francis' police cruiser. Ortiz asked the victim if she would go over to the cruiser where the defendant was being detained. When she arrived, Francis asked the victim if she could identify the person in the cruiser. Standing eight feet away and looking into the open window of the cruiser, the victim answered, "That's the guy." Francis then asked the victim to move closer to the vehicle so that she could be certain about her identification. The victim approached the cruiser so that she was standing inches away from the door, looked into the backseat and stated, "That's the guy." The victim turned and walked away from the cruiser. As she walked away, the defendant stated: "I didn't do anything, I only asked her for directions and she freaked out."

The defendant was charged, and the matter was tried to the jury. The defendant filed a motion to suppress the incriminating statement that he made during the

identification, which the court denied.[1] The defendant subsequently was convicted of attempt to commit kidnapping in the first degree, attempt to commit kidnapping in the second degree and threatening in the second degree. The court enhanced his sentence, pursuant to General Statutes § 53-202k, for having committed a class A, B or C felony with a firearm, and the defendant received a total effective sentence of twenty-seven years incarceration, execution suspended after seventeen years, and a probationary period of five years. This appeal followed.

On appeal, the defendant claims that the court improperly denied his motion to suppress the statement that he made while detained in the backseat of the police cruiser when he was subjected to a show-up identification.[2] The defendant, who had not been read his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966),[3] asserts that the act of bringing the victim close to the window of the police cruiser to identify him constituted a custodial interrogation in violation of *Miranda*. We do not agree.

"Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to

[1] The defendant previously had filed a motion to suppress the identification on the ground that the identification procedure was unnecessarily suggestive, which the court denied. The defendant does not challenge the denial of that motion.

[2] "A show-up is the presentation of a single suspect to an eyewitness for possible identification." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 275 Conn. 534, 549 n.12, 881 A.2d 290 (2005).

[3] In *Miranda*, the United States Supreme Court set forth the rule that a suspect who is in custody must be advised, prior to police interrogation, of certain rights, including that he has the right to remain silent, that anything he says may be used against him in a court of law, that he has the right to the presence of an attorney and that if he cannot afford an attorney one will be appointed for him. See *Miranda* v. *Arizona*, supra, 384 U.S. 467–69.

police interrogation. . . . The defendant bears the burden of proving custodial interrogation." (Citations omitted; internal quotation marks omitted.) *State* v. *Betances*, 265 Conn. 493, 500–501, 828 A.2d 1248 (2003). There is no question, and the state concedes, that the defendant was in the custody of the police and had not yet been notified of his *Miranda* rights at the time he made the statement that is the subject of his appeal. The sole issue for our determination, therefore, is whether the defendant was subjected to interrogation at the time he made that statement.

"The term interrogation under *Miranda* refers both to express questioning and [its functional equivalent, meaning] any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. *State* v. *Vitale*, 197 Conn. 396, 411, 497 A.2d 956 (1985), quoting *Rhode Island* v. *Innis*, 446 U.S. 291, [301], 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). A statement which is not elicited as a result of interrogation, but is given freely and voluntarily without any compelling influence, is admissible in evidence. *State* v. *Copeland*, [205 Conn. 201, 207, 530 A.2d 603 (1987)]. It is the defendant's burden to show that he was interrogated. *State* v. *Doehrer*, [200 Conn. 642, 647, 513 A.2d 58 (1986)]." (Internal quotation marks omitted.) *State* v. *Wright*, 58 Conn. App. 136, 141–42, 752 A.2d 1147, cert. denied, 254 Conn. 907, 755 A.2d 884 (2000).

"The trial court's essentially factual determination of whether the police officer's conduct constituted interrogation is reversed only if it is clearly erroneous. *State* v. *Evans*, [203 Conn. 212, 227, 523 A.2d 1306 (1987)]." (Internal quotation marks omitted.) *State* v. *Johnson*, 253 Conn. 1, 109, 751 A.2d 298 (2000) (*McDonald, C. J.*, dissenting).[4] "When a factual issue implicates a con-

---

[4] Precedent dictates our conclusion that we must defer to the court's finding with respect to the "interrogation" component of custodial interrogation. We point out, however, that our case law now makes clear that a

stitutional claim, however, we review the record carefully to ensure that its determination was supported by substantial evidence. . . . Nonetheless, [w]e [will] give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Young*, 76 Conn. App. 392, 407–408, 819 A.2d 884, cert. denied, 264 Conn. 912, 826 A.2d 1157 (2003).

The defendant asserts that the act of bringing the victim close to the police cruiser to identify him was the functional equivalent of interrogation under the standard set forth in *Rhode Island* v. *Innis*, supra, 446 U.S. 291.[5] The defendant challenges, in particular, Fran-

determination regarding the "custody" component of custodial interrogation is a mixed question of law and fact that is subject to *de novo* review. See *State* v. *Turner*, 267 Conn. 414, 434–35, 838 A.2d 947, cert. denied, 543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004). The United States Supreme Court articulated that standard in *Thompson* v. *Keohane*, 516 U.S. 99, 112–13, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995). Prior to the decision in *Thompson*, our opinions often referred to the substantial evidence standard when reviewing determinations of custody, the same standard cited for determinations of interrogation. See, e.g., *State* v. *Pittman*, 209 Conn. 596, 606, 553 A.2d 155 (1989) ("The trial court's determination that the defendant was not in custody is a finding of fact. . . . That finding of fact by the trial court will not be overturned unless it is clearly erroneous. . . . We will, however, carefully review the record to ascertain whether the trial court's finding is supported by substantial evidence." [Citations omitted.]). Following the *Thompson* decision, in *State* v. *Pinder*, 250 Conn. 385, 736 A.2d 857 (1999), our Supreme Court explained that despite our reference to "substantial evidence" language in prior case law, "our approach long has been to conduct a plenary review of the record in order to make an independent determination of custody." Id., 412; *State* v. *Williams*, 65 Conn. App. 59, 67, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001). We question whether the same logic applies to determinations of interrogation and whether, consequently, such determinations are also mixed questions subject to de novo review. Regardless, an independent review of the record in this case would not change our conclusion that the defendant was not subject to interrogation during the show-up identification procedure.

[5] At the outset, we reject the defendant's initial claim that *Miranda* warnings should be required before every show-up identification procedure conducted by police on the ground that mere use of the procedure constitutes the functional equivalent of interrogation. Whether police conduct is reasonably

cis' request that the victim approach the cruiser, within inches of the defendant, to identify him for a second time. Regardless of whether the second identification was, as the defendant claims, "unnecessary," the court found that there was no evidence of psychological ploy or technique of persuasion involved in the procedure conducted by Francis. See *State* v. *Wright*, supra, 58 Conn. App. 139. An officer's subjective intent, while not conclusive, is relevant to our analysis of whether an interrogation took place. See *State* v. *Cuesta*, 68 Conn. App. 470, 478, 791 A.2d 686, cert. denied, 260 Conn. 914, 796 A.2d 559 (2002). Indeed, given that the officers apprehended the defendant and conducted the identification procedure within minutes after the incident had occurred, and given that Francis did not address the defendant, but spoke only to the victim regarding routine matters of police business, we agree that the evidence does not indicate that Francis sought to elicit any incriminating response from the defendant. See *State* v. *Wright*, supra, 139.

More importantly, however, under the facts of this case, the defendant has not shown that Francis should have predicted that his conduct would cause the defendant to incriminate himself. Although, undisputedly, being in police custody and subject to a show-up identification is a stressful experience, "[i]nterrogation, as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." (Internal quotation marks omitted.)

likely to elicit an incriminating statement is an objective determination that is based on the facts of a particular case. See *State* v. *Cuesta*, 68 Conn. App. 470, 478, 791 A.2d 686, cert. denied, 260 Conn. 914, 796 A.2d 559 (2002). The defendant's suggestion disregards that basic tenet and, consequently, lacks merit. We note that the sixth amendment right to counsel is in no way implicated in this case. Compare *Kirby* v. *Illinois*, 406 U.S. 682, 690, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972) (holding that defendant not entitled to counsel at show-up identification taking place before critical stage of prosecution).

*State* v. *Vitale*, supra, 197 Conn. 412. Accordingly, in *State* v. *Jackson*, 28 Conn. App. 721, 726, 613 A.2d 846, cert. denied, 224 Conn. 904, 615 A.2d 1045 (1992), we held that informing an individual of his arrest and the grounds for which he was arrested is not the functional equivalent of interrogation. We also have ruled that, following a pursuit during which a fleeing defendant had thrown drugs into a garbage can, an officer's act of retrieving those drugs in the presence of the defendant was not an act reasonably likely to elicit an incriminating response. *State* v. *Wright*, supra, 58 Conn. App. 139–40. In drawing our conclusion in *Wright*, we remarked that "[t]o hold otherwise would unduly inhibit any law enforcement officer from retrieving the objects of his investigation in the presence of a suspect." Id., 143. As in *Jackson* and *Wright*, we conclude that the conduct of the officer in the present case was not the equivalent of interrogation, but constituted the standard implementation of an established police procedure, conducted with neither the intent nor the effect of coercing an incriminatory statement.

In the present case, the court found that the defendant possessed no personal characteristics, such as a mental deficiency, intoxication or youthfulness, that could have made him more susceptible to coercion. See *Rhode Island* v. *Innis*, supra, 446 U.S. 309. Furthermore, there is no evidence indicating that the defendant behaved in any way during the identification procedure that should have alerted Francis to the likelihood that the defendant would make an incriminating statement. See id. As the court noted, when the victim first identified the defendant when she was eight feet away from the cruiser, he did not respond. Given that the defendant did not appear to be provoked by that first identification, we cannot say that Francis should have foreseen that the second identification would yield a different result.

The case cited by the defendant, *Spann* v. *United States*, 551 A.2d 1347 (D.C. 1988), further supports our conclusion. In *Spann*, police conducted an on-the-scene interview with a robbery victim within earshot of the defendant. Id., 1349. An officer asked the victim whether the defendant was the person who had stolen her purse. Id. The victim pointed at the defendant and stated, "That's the one." (Internal quotation marks omitted.) Id. Immediately following the victim's response identifying him, the defendant blurted out that he had hit the victim and that she owed him money. Id. The court determined that the actions on the part of the police were not reasonably likely to elicit an incriminating response, that the defendant had no peculiar susceptibilities and that the officers were acting quickly and without improper motive. Id., 1350–51. We do not see any basis for distinguishing *Spann* from the present case.

On the basis of the foregoing analysis, the court's determination that the defendant was not subjected to a custodial interrogation requiring the use of *Miranda* warnings was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.