*44 Dissenting Opinion by
NAKAYAMA, J.,
in which RECKTENWALD, C.J., Joins.
The Majority concludes that Kazanas was subjected to interrogation when Officer Avilla asked Kazanas about his Halloween. In reaching this conclusion, the Majority not only fails to consider the totality of the circumstances surrounding the incident, but also expressly denounces the totality of the circumstances review as a critical aspect of the test used in determining whether an interrogation has occurred. As a result, the Majority concludes that Officer Avilla was required to advise Kazanas of his Miranda rights prior to engaging him in this conversation; the fact that she did not do so leads the Majority to hold that Kazanas’s statements were the product of interrogation and therefore inadmissible at trial.
Because I believe that a totality of the circumstances review is a necessary element in evaluating whether an interrogation has occurred, and because such a review evidences that Officer Avilla did not subject Kazanas to interrogation, I disagree with the Majority’s holding that Kazanas’s statements should be suppressed. For these reasons, I respectfully dissent from Section IV.A of the Majority’s opinion.
DISCUSSION
I. The Totality of the Circumstances Review is an Appropriate Consideration When Determining Whether an Interrogation Occurred.
“Under Miranda, warnings must be provided when a defendant is (1) in custody, and (2) under interrogation.” State v. Eli, 126 Hawai'i 510, 521, 273 P.3d 1196, 1207 (2012). Kazanas was undisputably in custody at the time of making the statements; thus, the issue in this case is whether Kazanas was under interrogation.
Hawaii law explicitly provides that the totality of the circumstances should be considered when assessing whether an interrogation has occurred: “[Wjhether a police officer has subjected a person to Interrogation’ is determined by objectively assessing the ‘totality of the circumstances.’ “ State v. Ketchum, 97 Hawai'i 107, 119, 34 P.3d 1006, 1018 (2001) (quoting State v. Ah Loo, 94 Hawai'i 207, 210, 10 P.3d 728, 731 (2000)). Under the totality of the circumstances review, there is “a focus upon the conduct of the police, the nature of the questions asked, and any other relevant circumstance,” but the most pertinent question is “ Ivhether the police officer should have known that his [or her] words or actions were reasonably likely to elicit an incriminating response’ from the person in custody.” Ketchum, 97 Hawai'i at 119, 34 P.3d at 1018 (quoting State v. Ikaika, 67 Haw. 563, 567, 698 P.2d 281, 284 (1985)).
Despite the clear state of Hawaii law on this topic, the Majority concludes that the totality of the circumstances should no longer be considered and that the only question that a court may use in evaluating whether an interrogation took place is whether the police officer should have known that his or her words or actions were reasonably likely to elicit an incriminating response from the person in custody. While I agree that the Majority’s test is the “ultimate question” when determining whether an interrogation has occurred, I believe that the totality of the circumstances must be evaluated in order to answer that question. The Majority’s conclusion not only circumvents this court’s explicit decision in Ketchum, which has been the law in Hawaii for the past fifteen years, but it also finds no basis in case law or practical application.
A. Case Law Supports Using a Totality of the Circumstances Review When Determining Whether an Interrogation Has Occurred.
The Majority correctly notes that the test for whether an interrogation has occurred originated in the United States Supreme Court case Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The Innis Court held that, under Miranda, interrogation “refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response.” 446 U.S. at 300, 100 S.Ct. 1682. Although Innis does not expressly mention a totality of the circumstances review, the Court did consider cer *45 tain factors in evaluating whether an interrogation occurred. Id. at 302, 100 S.Ct. 1682.
First, the Court expressly noted that “[a]ny knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion might be an important factor in determining whether the police should have known that their words or actions were reasonably likely to elicit an incriminating response from the suspect.” Id. at 302 n. 8, 100 S.Ct. 1682 (emphasis added). This factor appears to require that the court evaluate the officer’s knowledge of the suspect, including the suspect’s appearance, demeanor, behavior, personal or criminal background, or any other relevant considerations.
Second, the Court considered the length and content of the conversation between the officers and the suspect in making a determination on whether an interrogation occurred. The Court noted that only a “brief conversation” consisting of “no more than a few off hand remarks” occurred and that this was “not a case where the police carried on a lengthy harangue in the presence of the suspect.” Id. at 303, 100 S.Ct. 1682. Additionally, the Court evaluated the content of the officers’ comments and concluded that “under the circumstances, the officers’ comments were [not] particularly ‘evocative.’ “ Id Thus, in determining whether the police should have known that their words or actions were reasonably likely to elicit an incriminating response from the suspect, the Court considered a number of factors, implicitly conducting a totality of the circumstances review.
Similarly, before Ketchum established that the totality of the circumstances should be considered when evaluating whether an interrogation occurred under Hawai'i law, this court implicitly conducted a totality of the circumstances review in State v. Ikaika, 67 Haw. 563, 567, 698 P.2d 281, 284 (1985). Relying on Innis, this court explained that the test for determining if the defendant was subjected to interrogation was “whether the police officer should have known that his words or actions were reasonably likely to elicit an incriminating response from the Defendant.” Id However, just as the Supreme Court did in Innis, this court also looked to other factors before determining that the defendant was not subjected to interrogation:
[T]he Defendant had had previous encounters with law enforcement. He had been arrested, booked and processed for prior offenses and had been advised of his constitutional rights at least twice before. The Defendant had been jailed on an unrelated misdemeanor in April 1981. At that time, he was advised of his Miranda rights by his attorney who specifically informed him that “loose lips sink ships” referring to the inadvisability of speaking to police without an attorney present.
Id. Additionally, this court considered the nature of the officer’s comment, concluding that it was “merely ... a greeting” and noting that the officer had “asked no further questions and made no other remarks.” Id.
Thus, this court’s articulation of the totality of the circumstances review in Ketchum finds a strong basis in the case law of Hawaii and the Supreme Court.[1] Furthermore, other jurisdictions also look to the totality of the circumstances when determining whether an interrogation has occurred. See Prioleau v. State, 411 Md. 629, 651, 984 A.2d 851, 864 (2009) (“The critical inquiry, therefore, is whether [the Detective], based on the totality of the circumstances, knew or should have known that [his greeting to Petitioner] would be reasonably likely to elicit an incriminating response.”); State v. Cunningham, 144 *46 Wis.2d 272, 281, 423 N.W.2d 862, 866 (1988) (conducting a totality of the circumstances review to determine whether an interrogation had occurred after noting that Innis “failed to enumerate specific factors a court should examine”).
B. It is Impractical to Determine Whether an Interrogation Occurred Without Considering the Totality of the Circumstances Surrounding the Alleged Interrogation.
As the examination of pertinent case law above exhibits, it is impractical, if not impossible, to determine whether an interrogation occurred without considering the totality of the circumstances surrounding the alleged interrogation. I agree with the Majority’s statement that the “touchstone in analyzing whether ‘interrogation’ has taken place is whether the police officer ‘should have known that his [or her] words and actions were reasonably likely to elicit an incriminating response from the defendant.’ “ However, such a question cannot be answered without a totality of the circumstances review. An officer’s words or actions do not occur in a vacuum. The time, place, length of interrogation, nature of questions asked, conduct of the police, behavior of the suspect, and other relevant factors are necessary tools when determining whether the police should have known that their words or actions were reasonably likely to elicit an incriminating response from the suspect.
Furthermore, despite their avid and explicit denouncement of the totality of the circumstances review, the Majority implicitly conducts a totality of the circumstances review in this ease before concluding that Officer Avilla subjected Kazanas to an interrogation. For instance, the Majority considers the location of the interrogation, nature of the questions asked by and conduct of Officer Avilla, and the timing of the interrogation when noting the following: “Officer Avilla took Ka-zanas alone to HPD’s private room in the hospital”; “[although [Officer Avilla] did not expressly ask Kazanas about punching Ross and smashing the car’s rear windshield, she did ask him how his Halloween went”; “Officer Avilla knew how Kazanas’s Halloween went, as she encountered him at the tail end of his night at the field show-up identification, and she was directed to transport him to Queen’s Medical Center after his UEMV arrest, which had occurred about an hour earlier,” The Majority’s own analysis of the facts of this case show that it is impractical to determine whether an interrogation has occurred without considering the totality of the circumstances.
In sum, I do not dispute that the “ultimate question” in determining whether the police have interrogated a defendant is whether the officer should have known that his or her words or actions were reasonably likely to elicit an incriminating response from the suspect; however, in order to answer that question, the totality of the circumstances must be evaluated. In this case, the totality of the circumstances shows that Officer Avilla acted appropriately given the situation, and that her words and actions were not reasonably likely to elicit an incriminating response from Kazanas.
II. Kazanas Was Not Subjected to Interrogation.
Kazanas was arrested for actions arising out of events that occurred on Halloween night, 2011. In the early morning hours of November 1, 2011, Officer Avilla took Kaza-nas to Queen’s Medical Center to get treatment for his hand. Officer Avilla testified that, while waiting to be seen by the doctor, Kazanas “was being rude and saying things that were verbally offensive to other people in the area[.]” Officer Avilla moved Kazanas to the Honolulu Police Department (HPD) patient room so that he would not bother other patients and, in an effort to “take his mind off of what he was saying[,]” Officer Avilla started talking to Kazanas, asking him “how was his Halloween, did he enjoy the costumes, things along that matter, but never about the investigation.”
Officer Avilla further testified that, after she had moved Kazanas to the private room, he, “out of the blue,” said “[i]f people didn’t upset me, I wouldn’t have to punch them.” At that point, Officer Avilla told Kazanas that “his ease was stUl under investigation and to stop what he was saying, because it could be *47 used against him in a court of law.” Kazanas apologized and then, about a minute later, said, “[i]f you didn’t catch me now, you would have caught me for something else later.” When asked why he made these comments to Officer Avilla, Kazanas testified that he “was just speculating to the fact that [the police officers] said that I was under arrest for an assault.”
Given the totality of the circumstances, it is unreasonable to conclude that Officer Avil-la should have known that her interaction with Kazanas was reasonably likely to elicit an incriminating response from him. The conversation at issue occurred in the hospital while they were waiting for Kazanas to receive treatment for his injury. Although Officer Avilla and Kazanas were in a private HPD room within the hospital when the statements were made, evidence presented at trial indicates that Officer Avilla moved Kazanas to this room because he was “making comments that were rude and other patients could hear it” and that Kazanas’s "demeanor made it seem that he was under the influence of something[.]” There is no evidence that Officer Avilla acted in an intimidating or coercive manner during this encounter; additionally, the conversation itself was brief. See Innis, 446 U.S. at 303, 100 S.Ct. 1682 (looking to the length and tone of the conversation between the officers and the suspect when determining whether an interrogation had occurred and explaining that this was “not a case where the police carried on a lengthy harangue in the presence of the suspect”). Officer Avilla’s questions—“if he enjoyed Halloween that night, what kind of costumes did he see”—were not of the nature a reasonable person might expect would lead to an incriminating response. Furthermore, when Officer Avilla realized Kazanas was making potentially incriminating statements, Officer Avilla advised Kazanas that his statements could be used against him in court and to stop what he was saying. As such, in consideration of the totality of the circumstances and specifically such factors as timing, location, conduct of the officer, behavior of the suspect, and nature of questions asked, I cannot conclude that Officer Avilla should have known that her words and actions were reasonably likely to lead to an incriminating response from Kazanas.
Further, Officer Avilla testified that the questions she asked Kazanas were made in an attempt to calm Kazanas down, and were nothing more than small talk that did not have to do with the investigation. According to Officer Avilla, Kazanas’s comments were not in response to her questions, but were delayed and “out of the blue.” In fact, Kaza-nas did not testify that his comments were in response to Officer Avilla’s questions, but instead testified that he was merely “speculating” as to why he was under arrest.
The Majority argues that considering Officer Avilla’s intent in this circumstance “goes against Innis ⅛ express holding” because evaluating an officer’s words and actions under Innis “would generally not include evidence of police intent” except where “ ‘a police practice is designed to elicit an incriminating response from the accused[.]’ “
I believe that the Majority mischaracter-izes the rule Innis established regarding the role of police intent in determining whether an interrogation has occurred. The Supreme Court explained that the definition of interrogation “focuses primarily upon the perceptions of the suspect, rather than the intent of the police.” Innis, 446 U.S. at 301, 100 S.Ct. 1682. However, the Supreme Court also explained that “[t]his is not to say that the intent of the police is irrelevant, for it may well have a bearing on whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response.” Innis, 446 U.S. at 301 n. 7, 100 S.Ct. 1682. And while the Supreme Court then went on to explain that police intent is relevant “[i]n particular, where a police practice is designed to elicit an incriminating response from the accused,” the Supreme Court did not exclude other instances of police intent from being considered, as the Majority concludes. Id. As such, although not a primary consideration, the intent of the officer is still a relevant consideration in this case. Thus, Officer Avilla’s testimony that she intended to calm Kazanas down with her questions is relevant in our review of the totality of the circumstances.
*48 Additionally, a measure of what was objectively reasonable when determining whether an officer should have known that her words or actions were reasonably likely to illicit an incriminating response must take into consideration what the people involved in the interaction thought. Here, Officer Avilla had no intent to interrogate and Razanas testified that, when he made the statement, he “was just speculating to the fact that they said that I was under arrest for an assault.” Thus, the only people present for the exchange did not consider it an interrogation at the time it occurred or later when testimony was given at trial. Even without considering the intent of Officer Avilla, an analysis focusing “primarily upon the perceptions of the suspect” suggests that Razanas was not subjected to interrogation. See Innis, 446 U.S. at 301, 100 S.Ct. 1682.
As such, Razanas’s comments are more accurately characterized as unsolicited and spontaneous statements made during small talk or casual conversation rather than a confession resulting from interrogation. See Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (“The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated.”); see also Ikaika, 67 Haw. 563, 698 P.2d 281 (holding that an officer who greeted defendant and asked defendant what had happened could not have reasonably foreseen that his words or acts would elicit an incriminating response from defendant); Mickey v. Ayers, 606 F.3d 1223 (9th Cir.2010) (“Casual conversation is generally not the type of behavior that police should know is reasonably likely to elicit an incriminating response”).
The Majority believes that Razanas’s situation is analogous to that in State v. Joseph, 109 Hawai'i 482, 128 P.3d 795 (2006) and State v. Eli, 126 Hawai'i 510, 273 P.3d 1196 (2012). In Joseph, the police subjected the defendant to a “pre-interview” at the police station, in which the police questioned the defendant about a shooting without fust reading the defendant his Miranda rights. 109 Hawai'i at 484, 128 P.3d at 797. The pre-interview took place in an interrogation room and lasted about twenty-two minutes, after which the police advised the defendant of his Miranda rights and conducted a formal interview with him. Id. at 487, 128 P.3d at 800. This court held that, under the totality of the circumstances, the pre-interview was considered an interrogation and that the defendant should have been advised of his Miranda rights before the pre-interview. Id. at 495-96, 128 P.3d at 808-09.
Similarly, in Eli, a detective asked the defendant in a police station interview room if the defendant wanted to give a statement and tell “his side of the story.” 126 Hawai'i at 514, 273 P.3d at 1200. The defendant answered in the affirmative. Id. At that point, the detective advised the defendant of his Miranda rights and conducted a formal interview. Id. at 514-15, 273 P.3d at 1200-01. This court held that the detective’s question constituted an interrogation because the detective should have known that asking the defendant for his side of the story was reasonably likely to elicit an incriminating response. Id. at 522-23, 273 P.3d at 1208-09.
Both Joseph and Eli are distinguishable in important ways from the current case. In Joseph and Eli the police asked the defendants pointed questions relating to their respective investigations. These questions occurred at the police station in an interview setting. See Joseph, 109 Hawai'i at 484, 128 P.3d at 797; Eli, 126 Hawai'i at 514, 273 P.3d at 1200. In this case, Officer Avilla asked Razanas general questions about his Halloween while they were waiting at the hospital. Based on the conduct of Officer Avilla, the circumstances surrounding the interaction, and the nature of the questions asked, I cannot conclude that Officer Avilla should have known that her words or actions were reasonably likely to elicit an incriminating response from Razanas. Further, I do not believe that this is the type of situation contemplated under Miranda.
As the Majority notes, this month marks the fiftieth anniversary of the landmark case, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). And while the Majority relies heavily on the procedural safeguard that was first articulated in Mi *49 randa, the Majority fails to underscore the reasons why the Miranda Court felt compelled to provide such a safeguard.
In Miranda, the Court established a procedural safeguard to secure the privilege against self-incrimination because it was concerned that law enforcement was behaving improperly in order to obtain confessions and that the veracity of such confessions was often compromised. 384 U.S. at 444, 447, 86 S.Ct. 1602 (“Not only does the use of the third degree involve a flagrant violation of law by the officers of the law, but it involves also the dangers of false confessions, and it tends to make police and prosecutors less zealous in the search for objective evidence.”); see also State v. Naititi, 104 Hawai'i 224, 236, 87 P.3d 893, 905 (2004) (“[O]ne of the basic considerations underlying the exclusion of confessions obtained through coercion is the inherent untrustworthiness of involuntary confessions.... An involuntary confession is inherently untrustworthy because the free will of an individual is overborne by the external influence exerted in obtaining it.”) (internal quotation marks and citations omitted).
Of particular concern to the Court was the “interrogation atmosphere and the evils it can bring.” Miranda, 384 U.S. at 456, 86 S.Ct. 1602. For instance, the eases the Court considered in Miranda all involved lengthy interrogations of suspects who were kept in near or total isolation:
In No. 769, Miranda v. Arizona, the police arrested the defendant and took him to a special interrogation room where they secured a confession. In No. 760, Vignera v. New York, the defendant made oral admissions to the police after interrogation in the afternoon, and then signed an inculpatory statement upon being questioned by an assistant district attorney later the same evening. In No. 761, Westover v. United States, the defendant was handed over to the Federal Bureau of Investigation by local authorities after they had detained and interrogated him for a lengthy period, both at night and the following morning. After some two hours of questioning, the federal officers had obtained signed statements from the defendant. Lastly, in No. 584, California v. Stewart, the local police held the defendant five days in the station and interrogated him on nine separate occasions before they secured his inculpatory statement.
Id. at 456-57, 86 S.Ct. 1602 (formatting altered). The Court concluded “[i]t is obvious that such an interrogation environment is created for no purpose other than to subjugate the individual to the will of his examiner. This atmosphere carries its own badge of intimidation. To be sure, this is not physical intimidation, but it is equally destructive of human dignity.” 384 U.S. at 457, 86 S.Ct. 1602.
The circumstances in the current case are much different than the circumstances described above. This case does not involve long periods of isolation or interrogation, an atmosphere of intimidation, or purposeful subjugation of the defendant to the will of the police officer. Furthermore, this ease does not involve the “dangers of false confessions” that accompany an intimidating interrogation atmosphere. If anything, the Majority’s holding in this case undermines the truth seeking function of the judicial system by suppressing statements that were made without the influence of an interrogation atmosphere. See State v. Flores, 131 Hawai'i 43, 56, 314 P.3d 120, 133 (2013) (“Our courts are ... forums for the discovery of truth.”); see also Miranda, 384 U.S. at 478, 86 S.Ct. 1602 (“Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.”).
CONCLUSION
Because I believe that Officer Avilla did not subject Razanas to interrogation and that his statements were admissible at trial, I would affirm the judgment of the ICA.

. The Majority argues that the cases Ketchum relied upon when it articulated the totality of the circumstances test for interrogation do not stand for that proposition, but instead stand for the proposition that the totality of the circumstances review should be used only when determining whether a defendant is in custody. While it is true that these cases utilized a totality of the circumstances review when determining whether a defendant's statements were made in a custodial context, the Majority fails to explain why it would be proper to consider the totality of the circumstances in the custodial context but improper to do the same when determining whether a defendant had been subjected to interrogation. After all, the same factors (timing, location, and length of the interrogation, conduct of the officer and/or suspect, nature of the questions asked, etc.) are relevant when determining whether a defendant is in custody and/or whether a defendant is subjected to interrogation.